By the Court. Oakley, Ch. J.
All the claims arising from this loss, were amicably settled between the parties, except the plaintiff’s claim for the capstans and for the timber situated on the side walks adjacent to the premises called the ship yard. At the trial, the inquiry as to the capstans was two-fold; first, whether they were within the policy; and second, whether the plaintiff had been paid his loss in that respect by the owners of the ships which he was building, and for which the capstans were preparing. The judge held at the trial, that they were within the terms of the policy, as timber in process of being wrought into vessels; and this was undoubtedly correct. The question as to the plaintiff’s having received his loss upon the capstans from another source, was submitted to the jury, who were instructed, in accordance with the defendants’ request, that if he had so received it, he could not recover it from them. The jury found that the plaintiff had not received this portion of his loss from any quarter, and we see no reason to interfere with their conclusion.
■ The main question in the case, arises on the other part of the claim, and is, whether the timber on the side walks was within the stock insured by the policy. • The defendants contend that the risk is confined expressly to timber in the yard as bounded *505 by Sixth and Seventh streets, Lewis street, and the East river; and that the court is to consider the sides of the streets and the margin of the river, as having been deemed the boundaries of the yard, as if the words to be construed were found in a conveyance of land.
The plaintiff’s premises were an unfenced yard. Some fence remained along portions of the yard adjacent to the street, while along other portions there was none. The plaintiff offered to prove, and did prove, that it was usual for the owners of ship yards in this city, to keep their stock of timber on the side walks and in the streets in the vicinity of their yards, as much so as within the yards. It further appeared that the ends of some of the sticks of timber, embraced in the appraisal as timber outside of the plaintiff’s inclosure, in fact projected into the inclosure, and across the line where the fence had formerly been. This testimony was objected to by the defendants, but it was received by the judge, and it was properly admitted. The object of the evidence of usage, (as it is called,) in these cases, is to ascertain what is the meaning of the language used by the parties in their contract; whether by the words “ stock of ship timber in a ship yard,” was meant a yard bounded by lines exactly defined, and limited by streets or other lineal land-marks, or a yard as it was in fact used by ship builders in conducting their business.
There was no good objection to the evidence offered on this point; and it being uncontradicted, it was sufficient to establish the usage, and to prove that a ship yard embraces the ground adjoining the inclosure, so far as it is used for keeping the stock of ship timber there provided for use.
There is another point of difficulty to the defendants, if the usage were excluded: viz,, whether the insurance is at all confined to stock in the plaintiff’s yard. On reading the policy, it will be perceived that there is no such limitation in the clause relating to the stock of ship timber, &.C., on which $3500 were underwritten ; and three new lines, with as many distinct subjects of insurance, intervene before the yard is mentioned.
It is a serious question whether the yard, as thus mentioned, applies at all to the first subject insured, and if it were neces *506 sary to decide the point, we should be inclined to hold that it does not. We are satisfied, however, that the verdict should be maintained on the other ground, and the motion for a new trial must be denied.