Farmers' Loan and Trust Co. *v.* Harmony Fire and Marine Insurance Co.

[NEW YORK GENERAL TERM, January 6, 1868.    *Geo. G. Barnard, Sutherland,* and *Ingraham,* Justices.]

---

THE FARMERS' LOAN AND TRUST COMPANY *vs.* THE HARMONY FIRE AND MARINE INSURANCE COMPANY.

The plaintiffs, as trustees of a railroad company, effected a policy of insurance with the defendants " on any property belonging to the said trust company, as trustees and lessees as aforesaid, and on any property for which they may be liable, it matters not of what the property may consist, nor where it may be, provided the property is on premises owned or occupied by the said trustees, and situate on their railroad premises in the city of Racine, Wisconsin." *Held* that a dredge boat belonging to the plaintiffs, as trustees, in their employ in the city of Racine, and attached to their wharf where the road terminated, was thereby in the plaintiffs' possession, and annexed to the railroad premises, and therefore covered by the policy.

The act of incorporation of The Farmers' Loan and Trust Company fully authorized the company to accept a conveyance of property from a railroad company, in trust, to secure the payment of an issue of bonds by said railroad company.

Whether such loan and trust company can hold real estate in Wisconsin must depend on the statutes of that state. In the absence of any proof of a law to the contrary, it will be presumed that the company had authority to execute the trusts which by their charter they had power to undertake.

So long as they were allowed to remain in possession and use the railroad property so conveyed to them in trust, they had such an interest as would bring all their property connected therewith, under the terms of the policy.

APPEAL by the defendants, from a judgment entered on the verdict of a jury, and from an order denying a motion for a new trial, made upon the judge's minutes.

3

The Racine and Mississippi Railroad Company, on the 2d June, 1856, executed to the plaintiffs a trust mortgage on the railroad and its property and appurtenances, to secure its issue of railroad bonds. Default having been made in the payment of interest, the plaintiffs took proceedings to foreclose, which resulted in a surrender of the mortgaged property by the railroad to the plaintiffs as trustees or mortgagees in possession, on the 10th of May, 1859; after that the railroad was operated by the plaintiffs as trustees in possession, and was so operated when they effected a policy of insurance with the defendants, May 13, 1864, " on any property belonging to the said trust company, as trustees and lessees as aforesaid, and on any property for which they may be liable, it matters not of what the property may consist, nor where it may be, provided the property is on premises owned or occupied by the said trustees, and situate on their railroad premises in the city of Racine, Wisconsin."

The railroad company had purchased, and the plaintiffs as mortgagees and trustees, owned certain wharf property fronting on Root river. The cars came to the river, and the wharf was used for the transferring of freight between boats and cars. This action was brought to recover the value of a dredge belonging to the plaintiffs, and used to keep the water a sufficient depth in front of the wharf. It was burned during the life of the policy, March 29, 1865, in the morning, while fastened by lines to the wharf.

The only defenses were, that the dredge was not covered by the policy, and that the plaintiffs had not, by their charter, the right to be trustees of the Racine and Mississippi Railroad Company.

On the trial, the defendants insisted upon various grounds of defense, each of which was overruled by the court, and the defendants duly excepted. The court thereupon ruled that the plaintiffs were entitled to recover in this action the amount of the damages to be assessed by

the jury. The defendants duly excepted to this decision of the court. The question of damages was then submitted to the jury, who found a verdict for the plaintiffs for $1715.

The defendants thereupon moved the court upon the judge's minutes, for a new trial, which motion was denied, and the defendants appealed from the judgment and order.

*T. J. Glover,* for the appellants. I. The motion to dismiss the complaint ought to have been granted. 1. The plaintiffs gave no proof that they either owned or occupied the premises on which the dredge was, at the time of the fire. They offered no evidence of any paper title whatever. Conceding that the evidence tended to show occupation by them of the wharf and upland, it certainly did not show any occupation of the waters of Root river, or of the land under the waters thereof adjoining the wharf, within the meaning of the policy. Whatever may be the rights of the riparian proprietor in the bed of a navigable stream, he has no more right to the bed of the stream for the purposes of navigation as a highway than the rest of the public. The bed of the stream cannot be said to be in his occupation; it is in the occupation of the public; even when he uses it for purposes of navigation or of mooring a vessel, it is not the enjoyment of a private right of use or occupation, but the same quality and degree of right to which all the rest of the public are entitled. Whatever may be the exclusive right of ownership and occupation of a private wharf, it does not displace the public right of using the stream, and every part of it, as a highway. If the mere fact of mooring a dredge in a particular spot constitute the actual occupation of that place, so as to bring the subject within the terms of the policy, then this dredge would have been covered by the policy no matter where it might have been moored. Nothing but exclusive occupation by the plaintiffs would satisfy the

meaning of the policy. (*Heaney* v. *Heeney,* 2 *Denio,* 625. *Taylor* v. *Atlantic Mut.* 2 *Bosw.* 106. *S. C.* 9 *id* 369.) 2. The dredge was not situate on their *railroad* premises in the city of Racine. The waters of the Root river were not, and could not be used as *railroad premises,* however convenient they might be for *railroad purposes,* that is to say, for carrying and transferring freight in connection with the railroad. Neither was the land under the waters of the river adjoining the wharf used as *railroad premises.* It is impossible to conceive of any use of it as *railroad* premises that would not interfere with the public use of the stream, which would therefore be unlawful. 3. Insurance on the dredge was substantially a *marine* risk, and manifestly not within the purview of this policy. If the plaintiffs had desired to insure it, they would, it is fair to presume, have sought full protection by a marine policy covering the dredge when exposed to greater risks at different places in the river as well as when lying at the wharf.

II. The plaintiffs never had any title to the land under the waters of the Root river, on which the dredge was afloat. 1. They were not authorized by the laws of Wisconsin to take or hold real estate in that state. 2. They were not authorized by their charter to take or hold real estate in Wisconsin. (*Miller* v. *Ewer,* 14 *Shep.* 509. *Middle Bridge Corp.* v. *Marks,* 13 *id.* 326. *Bank of Augusta* v. *Earle,* 13 *Peters,* 529.) 3. They were not authorized to accept the mortgage by the railroad company, given in evidence. It was not on any loan made by them to the mortgagors. It was not on any real estate in the state of New York. 4. They were equally unauthorized to accept the deed of surrender. As mortgagees in possession, their title falls with the right to take the mortgage. As trustees, their title falls because their charter does not authorize trusts (especially of land out of the state,) and also because the trusts declared are void. (*F. L. and T. Co.*

v. *Carroll*, 5 *Barb.* 613.)   5. The railroad company, under which the plaintiffs claim, did not acquire any title to the lands under the waters of Root river, adjoining their wharf.   (*Act of Congress, June* 1, 1796, *Stat. at Large, vol.* 1, *p.* 491, § 6.   *Act of Congress, Aug.* 6, 1846, *vol.* 9, *p.* 56, §§ 3, 7, *sub.* 5.   *Seaman* v. *Smith*, 24 *Ill. Rep.* 521.   *Seneca Nation* v. *Knight*, 23 *N. Y. Rep.* 500.   *Flanagan* v. *City of Philadelphia*, 42 *Penn. R.* 219.   *People* v. *Canal Appraisers*, 33 *N. Y. Rep.* 461.)   6. Even though the plaintiff acquired title thereto, it was subject to the public easement as a highway, and such ownership was not within the meaning of the policy.

III. The plaintiffs were prohibited by law from taking the property and conducting the business of a railroad, and in employing the dredge in connection therewith. The policy of insurance was procured by them in further-ance of such illegal and prohibited acts, and for the pur-pose of saving them from loss while engaged in violating the law.   The plaintiffs can therefore maintain no action theron.   (*Bartlett* v. *Vinor, Carth.* 251.   *Gray* v. *Sims*, 3 *Wash. C. C.* 276.   *Pearce* v. *Madison and Ind. R. R.*, 21 *How. U. S.* 441.   *Bissell* v. *M. S. and N. I. R. R.*, 22 *N. Y. Rep.* 258, 284, 285, 301, 302, 304.   *Redmond* v. *Smith*, 7 *Man. & Gr.* 474.   1 *R. S.* 600, § 3.)

IV. The exceptions to the admission of evidence and to the rulings of the court, and the refusal to rule as requested, are well taken.

*S. P. Nash*, for the respondents.   I. The dredge was in the city of Racine.   The city lay on both sides of the river.

II. By their deeds the Racine and Mississippi railroad took title to the land under water in front of the wharf to the middle of the stream, and they conveyed the same title to the plaintiffs.   (*Marriner* v. *Schulte*, 13 *Wisc. Rep.* 692. *Arnold* v. *Elmore*, 16 *id.* 509.   4 *id.* 321, 486, 508.   2 *id.* 308. *Jones* v. *Soulard*, 24 *How. U. S.* 41.)   The dredge was,

therefore, at the time of the fire, on the land of the plaintiffs, and accordingly, on their railroad premises. (*See McCannon* v. *Sinclair*, 2 *El. & El.* 105 *Eng. Com. Law*, 53.)

III. The dredge was property of the plaintiffs, used in the legitimate business of the railroad. The policy covered every thing fairly owned by the company, " it matters not of what the property may consist." The only restriction was, that it should be " on their railroad premises in the city of Racine." The railroad premises were not confined to the tracks of the road. Depot grounds, freight houses, machine shops, stables for their horses, were all railroad premises. The wharf and the land under water in front of it were railroad premises, and while the dredge was moored to the wharf, it was on the railroad premises, as much as a car on the track, or an elevator on the land. (*See Webb* v. *Nat. Ins. Co.*, 2 *Sandf.* 497.)

IV. The plaintiffs had sufficient power under their charter to accept the trust in question, and to enforce it by taking possession and operating the road. But if not, the defendants, after issuing their policy and receiving the premium, are estopped from disputing the capacity of the plaintiffs.

V. The exceptions are immaterial, and should be disregarded.

*By the Court*, INGRAHAM, J. By the act of the legislature of Wisconsin, of 1848, the city of Racine extended to the centre of Root river. By the deed the Racine and Mississippi Railroad Company acquired lots 1, 2, 3 and 4, in block No. 2, as these lots are sold by the map numbers.

The dredge boat, when burned, was lying adjoining to and fastened to the wharf of the railroad company; and the principal queston is whether this boat is included in the property that was insured " as any property on the premises owned or occupied by the plaintiffs, as trustees, situate on the railroad premises in the city of Racine."

The property belonged to the plaintiffs, as trustees, was in their employ in the city of Racine, and attached to their wharf, where the road terminated.

A similar question was examined by the Superior Court in *Webb* v. *The National Fire Ins. Co.*, (2 *Sandf.* 497,) and it was held that the plaintiffs might show that it was usual to keep such timber on the sidewalk, and that it was covered by the policy.

The boat in controversy was fastened to the plaintiffs' wharf. It was thereby in the plaintiffs' possession, and annexed to the railroad premises. Had it been the property of a third person it would have been liable to wharfage and liable to a distress for rent.

No objection is made to the right of the railroad company to erect the wharf, and even if their right to do so was questioned, still they were in actual possession, and until removed therefrom, the property they had thereon was covered by the policy.

As to this boat, the evidence warrants the conclusion that she was so attached to the wharf as to make it upon the property of the railroad, within the description contained in the policy.

The other objection is to the capacity of the plaintiffs to take such a trust. The act of incorportion fully authorizes a trust created by deed such as this was. Whether they could hold real estate in Wisconsin would depend on the statutes of that state. In the absence of any proof of a law to the contrary, we must presume that the company had authority to execute the trust, which by their charter they had power to undertake. So long as they were allowed to remain in possession and use the railroad property, they had such an interest as would bring all their property connected therewith under the terms of the policy.

The judgment should be affirmed.

[NEW YORK GENERAL TERM, January 6, 1868. *Geo. G. Barnard, Sutherland* and *Ingraham,* Justices.]